IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-00405-JLK-MEH

NICK LYNCH,

    Plaintiff,

v.

ADAM BARRETT,
SGT. KENFIELD,
ERIC GOLLADAY, and
MICHAEL MORELOCK,

    Defendants.

---

**RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

Pending before the Court is Defendants' Motion for Summary Judgment [filed March 22, 2010; docket #54]. The motion is referred to this Court for recommendation. (Docket #68.) The matter is fully briefed, and oral argument would not assist the Court in its adjudication. For the following reasons, the Court **RECOMMENDS** that Defendants' Motion for Summary Judgment be **GRANTED IN PART** and **DENIED IN PART**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

## BACKGROUND

These facts are taken from Defendants' Motion for Summary Judgment, and Plaintiff does not dispute them. At approximately midnight on March 29, 2008, Plaintiff and two of his friends were waiting to get into a club in downtown Denver. While they were waiting, Plaintiff got into an argument with Justin Henkenberns who was also waiting to get into the club. Plaintiff punched Henkenberns several times, knocking him to the ground. Plaintiff and his friends left immediately and walked down Market Street toward 20th Street. Henkenberns followed them. At approximately 20th and Market Streets, Plaintiff saw Henkenherns attempting to flag a policeman (presumably to report Plaintiff's conduct) and also saw a police officer heading in his direction. Plaintiff ran down 20th Street into an alley, jumped over a gate into a parking lot, and laid down in some bushes near the Volunteers of America building (at the corner of 19th Street and Market) in order to hide from police. Shortly thereafter, numerous police officers entered the gated area, and Plaintiff knew the gig was up. He stood up from behind the bushes and was apprehended by the police and placed under arrest. Plaintiff contends that during his arrest he was subjected to excessive force; however, he cannot specifically identify any officer who participated in the alleged use of force against him or who handcuffed and arrested him. All Defendants deny hitting him and deny knowing who arrested him and who, if anyone, hit him.

Plaintiff brings an excessive force claim and a claim for denial of access to the courts. The excessive force claim is self explanatory. Indeed, at least for purposes of summary judgment, Defendants do not deny that if the Plaintiff was beaten while under arrest, so he has stated a triable claim for excessive force. As for the second claim, Plaintiff contends that the police have engaged in a conspiracy of silence regarding which officer(s) participated in the arrest. Therefore, Plaintiff

2

believes he is substantially hindered in prosecuting his excessive force case, and the Defendants should be held accountable for their silence.

## STANDARD OF REVIEW

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the Court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Maldonado v. City of Altus*, 433 F.3d 1294, 1302 (10th Cir. 2006). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

The non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. If the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing a genuine factual issue for trial. *Hysten v. Burlington N. and Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002); Fed. R. Civ. P. 56(e). These specific facts may

3

be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), *except* the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324) (emphasis added). The Court must view the record and draw "all favorable inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## **MATERIAL FACTS**

I do not believe it is necessary to provide a lengthy recitation of facts. Most of the facts are undisputed, but the following facts guide my decision here:

### *I.     Officer Barrett*

On the date of the incident, Officer Barrett was partnered with Officer Abbegayle Dorn working District 6, Downtown Denver. (Docket #54 at 6, ¶ 20.) Officers Barrett and Dorn responded to 1900 Market Street. One or two police cars were already present. (*Id*. at 8, ¶ 30.) Barrett helped Officer Morelock get over the fence first, and then Morelock assisted Barrett. (Docket #54-2 at 6, p. 29 (Barrett dep.).) Barrett pulled his service weapon out and pointed it toward the bushes, at which time he saw Plaintiff start to stand up and some other police officers take Plaintiff down. (*Id*. at 6, p. 30.) Thereafter, Barrett looked for a way for the officers to walk out of the fenced area instead of climbing the fence again. Then he heard Officer Kenfield radio dispatch and tell dispatch that he had a person in custody, and that Officers Morelock and Golladay were with him (Kenfield). (*Id*. at 7, p. 34.)

### *II.    Officer Dorn*

Officer Dorn testified in her deposition that once she got over the fence, she did not see Plaintiff until he was handcuffed and being held by Officer Morelock. (Docket #54-3 at 4, p. 22

(Dorn dep.).) Dorn recalls seeing only Officers Barrett and Morelock inside the fence. (*Id*. at 6, p. 27.) However, although she initially testified that she did not know whether there were any other officers in the immediate vicinity, after additional questioning she testified that she knows for certain there were more officers inside the fence than herself and the two others listed above, but cannot identify them. (*Id*. at 6, pp. 29-30.) Since Plaintiff's claim is that a male arrested and struck him, Officer Dorn is not a defendant in this case.

### III. *Officer Morelock*

Officer Morelock also went over the fence in pursuit of Plaintiff. (Docket #54-5 at 2, ¶ 5 (Morelock decl.).) He saw at least "several other" officers in the fenced area. (*Id.*) He states that by the time he got to Plaintiff, Plaintiff was handcuffed, and Officer Morelock took possession of him from the other officers. (*Id*. at 2, ¶ 6.) Morelock remembers that Officer Dorn helped him escort Plaintiff to the police van but does not remember the officers from whom he took Plaintiff, although he does place Officers Barrett and Kenfield at the scene. (*Id*. at 2, ¶ 8; 3, ¶ 13.)

### IV. *Officer Kenfield*

Officer Kenfield also went over the fence in pursuit of Plaintiff. (Docket #54-4 at 2, ¶ 5 (Kenfield decl.).) He saw at least "several officers" in the fenced area. (*Id.*) Officer Kenfield remembers that he was the highest ranking officer on the scene, (*id*. at 2, ¶ 6), but he does not remember a single other officer who was present that evening. (*Id. passim*.)

### V. *Officer Golladay*

Officer Golladay, although stating under oath that he does not remember any facts whatsoever about the incident involving Plaintiff, did in fact specifically recall that he did not participate in the search for/chase after Plaintiff, nor did he participate in his arrest. (Docket #54-6

at 2-3, ¶¶ 3, 4 (Golladay decl.).)

## VI. *Additional Evidence*

The additional material pieces of evidence submitted by Plaintiff include (1) a declaration by Cory Franek, a friend of Plaintiff who was not with him during any of the incidents leading to Plaintiff's arrest, but who was downtown that evening; and (2) a declaration by Cory Steiner, who claims to have seen four officers striking Plaintiff while Plaintiff was in the bushes (although he could not identify any of the officers). (Docket #55-2 at 12-13 (Franek aff.); docket #55-2 at 6-7 (Steiner aff.).) According to Franek, when Plaintiff was loaded into the police van, he called Franek and asked him to call Plaintiff's father to bail him out of jail. (Docket #55-2 at 12.) Coincidentally, Franek was very near the van in which Plaintiff was being held, and Franek saw Officer Barrett telling a story to another officer and using hitting motions with his arms and kicking motions with his legs. (*Id*. at 12-13.)

## ANALYSIS

### I. *Access to the Courts*

Defendants' motion relies on the Plaintiff's inability to establish the personal participation of any of the Defendants in the actual beating that Plaintiff alleges he suffered. Plaintiff does not dispute that he does not know who hit him. He thinks it may have been Officer Barrett based on Barrett's undeniable presence at the scene; Barrett's build (which is consistent with Plaintiff's recollection of the size of the male officer who struck him); and Cory Franek's eye witness account of Barrett's body language while Barrett was engaged in a conversation with another officer shortly after the incident (almost an "excited utterance" sort of proffer). Plaintiff contends that he knows that at least the four Defendants in this case were on the scene; that Plaintiff was beaten; and that

it must have been one of the four *or* someone they know. He claims that the officers' conspiracy of silence (among the four listed above and the other officers who were present that evening) is depriving him of the material evidence needed to prosecute his constitutional excessive force claim.

Without question, most courts that have addressed the existence of an "access to the courts" claim under these circumstances have found that the claim exists. *E.g.*, *DeLew v. Adamson*, 293 F. App'x 504, 506 (9th Cir. 2008) (unpublished); *Kelso v. City of Toledo*, 77 F. App'x 826, 832 (6th Cir. 2003) (unpublished); *Harbury v. Deutch*, 233 F.3d 596, 607 (D.C. Cir. 2000),[2] *rev'd on other grounds*, *Christopher v. Harbury*, 536 U.S. 403 (2002) (finding that plaintiff failed to sufficiently identify the legal claim which she was barred from bringing due to the cover up, without deciding the correctness of the access-to-court analysis); *Vasquez v. Hernandez*, 60 F.3d 325, 328 (7th Cir. 1995) ("[W]hen police officers conceal or obscure important facts about a crime from its victims rendering hollow the right to seek redress, constitutional rights are undoubtedly abridged."); *Barrett v. United States,* 798 F.2d 565, 575 (2d Cir. 1986). In the Tenth Circuit, unfortunately, the law is far from clear.

Principally, the Tenth Circuit in *Jennings v. City of Stillwater,* 383 F.3d 1199, 1207 (10th Cir. 2004) announced it has never recognized a claim of denial of access to the courts for a police cover-up. An earlier case, *Wilson v. Meeks,* 52 F.3d 1547, 1557 (10th Cir. 1995), also stated that Tenth Circuit precedent did not clearly establish a duty to avoid a police cover-up. The treatment

---

[2]"Should it have been clear to an objectively reasonable official that affirmatively misleading [plaintiff] for the purpose of preventing her from filing a lawsuit would violate her constitutional rights?-we think the answer is plainly yes. Not only have five of our sister circuits held that cover-ups that conceal the existence of a cause of action (or make it difficult to prosecute one) infringe the constitutional right of access to courts, and not only are we unaware of any contrary decision, but we think it should be obvious to public officials that they may not affirmatively mislead citizens for the purpose of protecting themselves from suit."

7

of these cases by subsequent opinions has been somewhat hands off. In *Nicholas v. Boyd*, 317 F. App'x 773, 778 (10th Cir. 2009) (unpublished), the court stated that it need not rule on the issue of whether a cover up stated a claim for denial of access, "because, even if Plaintiffs have a cognizable claim, it is barred by the applicable statute of limitations."

One week after *Jennings*, the Tenth Circuit said the following:

> On the merits of the claim, this court has long recognized a right of access to the courts. In 1984, we declared: "The right of access to the courts is constitutionally protected. Thus, conduct under color of law which interferes with that right gives rise to a cause of action under section 1983." Although the "right of access to the courts is neither absolute nor unconditional," it is unnecessary to explore every contour of this right here. We need only recount two principles. First, intentional, bad-faith destruction or concealment of evidence that burdens a plaintiff's ability to access the courts is an unconstitutional denial of access; and, second, allegations that police were negligent in an investigation or that they negligently lost or destroyed evidence will not support a denial of access claim.

*Donohue v. Hoey,* 109 F. App'x 340, 356-357 (10th Cir. 2004) (unpublished). This case seems to hold that the intentional withholding of evidence by police would support a constitutional claim. The point may have to remain academic, however, because I believe, based on the analysis in the next section, that the case should go forward on the excessive force claim, thereby rendering moot (or, perhaps more accurately at this point in time, not ripe) the alleged denial of access to the courts.

The *Jennings* court ultimately rejected the plaintiff's claim for unconstitutional deprivation of access to the courts because "[p]laintiff pursued her claims and reached a monetary settlement with the four football players and OSU." 383 F.3d at 1209. Relying upon the Supreme Court's "forward looking" and "backward looking" characterizations of access to court claims, *Christopher v. Harbury,* 536 U.S. 403 (2002),[3] the court found that the plaintiff's claim for denial of access, of

---

[3]"'[B]ackwards looking claims' arise when plaintiffs allege that a specific claim 'cannot be tried (or tried with all the evidence) [because past official action] caused the loss or inadequate

8

the backward-looking variety, hinged upon the plaintiff's loss of some remedy she otherwise would have had absent the deprivation. 383 F.3d at 1209. In *Jennings*, since the plaintiff did in fact proceed on her Section 1983 claim against government officials and achieved a monetary settlement of that claim, a necessary element of an access to court claim was absent. The *Jennings* plaintiff "pursued her claims and reached a monetary settlement . . . thus [having] access to the courts, and obtained a remedy." *Id*. (looking to *Christopher*, 536 U.S. at 415, for the proposition that there is "no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.").

Using that same logic here, if Plaintiff's case proceeds to trial, Plaintiff may be unable to satisfy the "loss of remedy" element of his second claim. Consistent with *Christopher*, Plaintiff enjoys access to the court to bring this suit and may "end up just as well off after litigating a simpler case without the denial-of-access element." However, I believe that the dismissal of the access to court claim should be without prejudice. Many courts require that access to the courts be adequate, effective, and meaningful. *E.g.*, *Vasquez*, 60 F.3d at 328. I believe that the determination of the quality of Plaintiff's access to the courts may have to await the ultimate outcome of this case. At this stage of the proceedings, it is premature to say that Plaintiff's right of access to the courts has been constitutionally preserved. Therefore, I recommend granting Defendants' Motion for Summary Judgment to the extent that Plaintiff's Second Claim be dismissed without prejudice.

---

settlement of a meritorious case.'" *Jennings*, 383 F.3d at 1208 (quoting *Christopher*, 536 U.S. at 413-14).

## II. Excessive Force

In my review of the parties' briefs and in my own research, I have seen decisions on both sides of the issue of whether a plaintiff's excessive force claim can survive when the plaintiff does not know who engaged in the alleged force, and the government officials who are questioned all deny their respective individual participation and also deny that they know who else was involved.[4] However, the Tenth Circuit's analysis in *Fogarty v. Gallegos*, 523 F.3d 1147 (10th Cir. 2008) guides my recommendation here. In that case, the plaintiff alleged that as a result of police officers' excessive and unreasonable force, he was injured and suffered a torn tendon in his wrist. The plaintiff could not positively identify which officers escorted him while under arrest and engaged in the unconstitutional conduct, which included forcing plaintiff to the ground, pulling his arms behind his back and forcing the palm of his hand toward his forearm in a "hyperflexion position," handcuffing him, ripping a drum off his belt, and dragging him down a street, all the time while he was having an asthma attack. 523 F.3d at 1152. No police arrest report was filed on the plaintiff's arrest. *Id*.

The *Fogarty* Court noted that the "[d]efendants' individual roles in Fogarty's arrest are the subject of a spirited factual dispute. Fogarty was never able to identify the officers who arrested him." *Id*.[5] Moreover, the plaintiff had alleged that one of the defendants who witnessed the arrest and did not stop the alleged excessive force was not wearing a gas mask, which was consistent with

---

[4]*E.g., Panaderia La Diana, Inc. v. Salt Lake City Corp.*, 342 F. Supp. 2d 1013, 1032-33 (D. Utah 2004) and cases cited by Defendants.

[5]Defendants also argued in the Tenth Circuit that they were not present for the alleged use of excessive force and should be dismissed. As the court noted, this is a fact-based argument that was inappropriate for the court to decide, given that the case was on interlocutory appeal from the district court's denial of qualified immunity. *See* 523 F.3d at 1165-66.

that defendant's own characterization of his attire that day. The district court determined that this was sufficient to support an inference that this defendant may have witnessed plaintiff's arrest without stopping the excessive use of force. The Tenth Circuit agreed, stating that under the circuit's clearly established law, if an officer is present at an arrest, "with an opportunity to prevent the excessive use of force, he would have had a duty to intervene." *Id.* at 1163. "Fogarty contends that [defendant] set the wheels of the alleged constitutional deprivation in motion and that he may have stood by and witnessed Fogarty's arrest and resultant injuries. We thus cannot hold at this stage in the litigation that [defendant] is entitled to qualified immunity on Fogarty's claim of excessive force." *Id.*

All of the Defendants in this matter were at the general scene of the arrest. At least with regard to Defendant Barrett, I believe there are sufficient facts in the record to support a jury verdict that he participated in the arrest of the Plaintiff. As to the remaining three officers, I believe there is sufficient evidence in the record to support a jury verdict that they witnessed the arrest and did not stop the alleged excessive force (and it bears repeating here that the allegation of the use of excessive force is not at issue in this motion). Officers Morelock and Golladay were close enough to the action that they escorted the arrested and cuffed Plaintiff to the transport vehicle. As for Officer Kenfield, he acknowledges that he was the most senior officer at the scene. As the *Fogarty* Court discussed, if one of the officers supervises the arrest and is present when lower ranking officers carry out the arrest, these facts raise an inference of a duty to intervene. In *Fogarty*, the Tenth Circuit held that the district court was correct in denying qualified immunity to the supervisor in such a situation. *Id.* at 1163-64.

I recognize that the "failure to intervene" aspect of an excessive force/Section 1983 claim was not specifically argued by the Plaintiff. This presents the question of whether such a theory is a unique claim that must be separately pleaded, or whether it is a theory of 1983 liability that falls within the penumbra of an excessive force claim (a claim which Plaintiff has brought here). The failure to intervene theory is clearly derivative of an excessive force claim; if a plaintiff did not suffer excessive force, there can be no failure to intervene claim. *Brooks v. Brown*, No. 95-1386, 1996 WL 460048, at *3 (10th Cir. 1996) (unpublished) ("Moreover, our conclusion that officers Korkowski and Brown did not use excessive force forecloses any derivative claim that Rasmussen and Wilson could be liable for failing to intervene on plaintiff's behalf."). The Tenth Circuit appears to denominate a failure to intervene theory as a variety of a 1983 excessive force claim. *E.g.*, *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1204 (10th Cir. 2008).

Plaintiff's failure to argue the "failure to intervene" theory is troublesome, but I am guided by the Eleventh Circuit's analysis in *Velazquez v. City of Hialeah*, 484 F.3d 1340 (11th Cir. 2007). There, the two defendants argued, on summary judgment, that plaintiff "would be unable at trial to prove the essential element of his claim of excessive force - that one or both officers beat him . . .," *id.* at 1342, because the undisputed fact was that plaintiff did not see who beat him. The court stated:

> Velazquez alleged that two officers were present when he was subjected to a beating while handcuffed. He has named the two officers in his complaint. They have admitted being present. Velazquez's allegations, taken in the light most favorable to him, as we must on summary judgment, create a triable issue of fact as to whether one or both of the officers used excessive force upon him, and whether one or the other failed to intervene to stop the use of such force. Velazquez's testimony at trial that he was beaten is competent evidence from which a jury may infer that excessive force was used. His testimony that two officers were present, coupled with their admission that they were present, permits the jury, if it believes that he was beaten, to find that both of the officers administered the excessive force or that one beat him

12

> while the other failed to intervene. . . . Velazquez's testimony that he was beaten after being handcuffed and that the two officers were present permits such an inference where the law prohibits both the beating and the failure to intervene.

*Id.* I believe the same analysis is applicable here. The facts, taken in a light most favorable to Plaintiff as the non-moving party, would support both a "beating" theory and a "failure to intervene" theory within a Section 1983 excessive force claim.

One other basis for denying summary judgment on this point is the Defendants' selective memory of the events that occurred that evening. Although Defendants argue that it is "difficult for the named Defendants to remember the identities of all of the officers who may have responded to the scene," I believe the jury should be entitled to evaluate the credibility of the officers' memories. (Docket #65 at 17 (placing the blame for the stale memories on the Plaintiff for waiting eight months to file a claim after the incident).) As noted above in the material facts, each officer has a specific memory of something significant concerning that evening, but none of them remembers who arrested Plaintiff, which would have been the paramount event of the whole occurrence. Therefore, I conclude that summary judgment in favor of Defendants would be inappropriate on these pleadings. I recommend that Defendants' motion be denied in this respect, and Plaintiff's First and Third Claims for use of excessive force be permitted to proceed.

## CONCLUSION

For the reasons stated above and the entire record herein, the Court **RECOMMENDS** that Defendants' Motion for Summary Judgment [filed March 22, 2010; docket #54] be **GRANTED IN PART** and **DENIED IN PART**, and Plaintiff's Second Claim be **DISMISSED WITHOUT**

13

**PREJUDICE**, leaving Plaintiff's First and Third Claims to proceed.[6]

Dated at Denver, Colorado this 9th day of June, 2010.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

[6] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).